1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT**

10

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

11
12

ROBERT RODRIGUEZ,                    CASE NO. 1:11-CV-01371-LJO-DLB

13
                      Plaintiff,      **SUMMARY JUDGMENT DECISION**

14
      vs.                                        (Doc. 24)

15

OFFICER TUSHNET,

16
                  Defendant.
                               /

17
18

**I. INTRODUCTION**

19

    Plaintiff Robert Rodriguez ("Mr. Rodriguez"), proceeding pro se, alleges that defendant Geoff

20

Tushnet ("Officer Tushnet"), an officer for the Fresno Police Department, violated his Fourth

21

Amendment rights by using excessive force during his arrest, pursuant to 42 U.S.C. § 1983 ("section

22

1983").  Officer Tushnet seeks summary judgment on the ground that the use of force was objectively

23

reasonable.  Officer Tushnet also argues that he is entitled to qualified immunity.  The motion is

24

unopposed.[1]  For the reasons discussed below, this Court GRANTS Officer Tushnet's motion for

25

summary judgment.

26

---

27

[1] In the absence of Mr. Rodriguez's opposition, this Court carefully reviewed and considered the entire record to determine whether defendant's motion for summary judgment is well supported.  Omission of reference to an argument, document, or paper is not to be construed to the effect that this Court did not consider it.  This Court thoroughly reviewed,

28

considered, and applied the evidence and matters it deemed admissible, material, and appropriate for summary judgment.

## II. BACKGROUND

**A. Officer Tushnet's Statement of Facts**[2]

In the late evening hours of June 23, 2010, Officer Tushnet was on duty with his canine partner, Kubo. (Doc. 24-4, ¶ 2). The two responded to a residential area where other officers had pursued a stolen vehicle. (Doc. 24-4, ¶ 2). Officer Tushnet was told that the suspect fled on foot in between houses. (Doc. 24-4, ¶ 2). A police helicopter was dispatched to the scene and gave at least two announcements that all residents should return to their homes because a police dog was going to be used to search the area and that the failure of the suspect to surrender could result in a dog bite. (Doc. 24-4, ¶ 3). Officer Tushnet gave a similar announcement from the ground. (Doc. 24-4, ¶ 3). After approximately ten minutes, there was no response from the suspect so Officer Tushnet and Kubo began a search of the area. (Doc. 24-4, ¶ 3, 5).

When the duo began their search, Officer Tushnet knew that the suspect had already demonstrated a complete disregard for the public's safety by fleeing from officers by driving a car at high speeds through a residential area at night. (Doc. 24-4, ¶ 4). It was also clear to Officer Tushnet that the suspect was not going to surrender voluntarily and had ample time to gain a position of tactical advantage over officers conducting a search of the area. (Doc. 24-4, ¶ 4). Further, Officer Tushnet was aware that the suspect had not been searched for weapons. (Doc. 24-4, ¶ 4).

Officer Tushnet and Kubo began their search in the backyard of a home where the suspect was last seen. (Doc. 24-4, ¶ 5). Kubo immediately alerted to the presence of a human in an adjacent lot. (Doc. 24-4, ¶ 5). The two moved to the adjacent lot and Officer Tushnet stayed in a position of cover while Kubo searched the area. (Doc. 24-4, ¶ 5). When Officer Tushnet heard a commotion, indicating that Mr. Rodriguez had been located, Officer Tushnet immediately left his position of cover and discovered that Kubo was biting Mr. Rodriguez's right leg. (Doc. 24-4, ¶ 5). Officer Tushnet was unable to see Mr. Rodriguez's hands which were concealed beneath his torso so he ordered Mr. Rodriguez to show his hands. (Doc. 24-4, ¶ 6). Mr. Rodriguez complied and Officer Tushnet immediately removed

---

[2] Because the motion is unopposed, this Court considers defendant's version of the facts as undisputed for purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2) (if a party fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion); *Beard v. Banks*, 548 U.S. 521, 527 (2006) (holding that the failure to specifically challenge facts identified in moving party's statement deemed admission of those facts).

1   Kubo from the bite.  (Doc. 24-4, ¶ 6).  No other physical force was used when two officers handcuffed

2   Mr. Rodriguez.  (Doc. 24-4, ¶ 6).  Another officer identified Mr. Rodriguez as the person who fled from

3   the stolen vehicle.  (Doc. 24-4, ¶ 6).  An ambulance was summoned and treated Mr. Rodriguez's injury.

4   (Doc. 24-4, ¶ 6).  Mr. Rodriguez was then transported to the Community Regional Medical Center

5   ("CMC") for further examination and treatment.  (Doc. 24-4, ¶ 6).  While at the CMC, Mr. Rodriguez

6   admitted to using methamphetamine.  (Doc. 24-4, ¶ 7).  A drug evaluation confirmed that Mr. Rodriguez

7   was under the influence.  (Doc. 24-4, ¶ 7).

8   **B. Procedural History**

9        On August 17, 2011, Mr. Rodriguez filed a pro se complaint in which he alleged a claim under

10  section 1983 for excessive force in violation of the Fourth Amendment against Officer Tushnet and police

11  dog Kubo.  (Doc. 1, p. 3-4).  Police dog Kubo was dismissed from the complaint with prejudice.  (Doc.

12  7).  On November 10, 2011, Officer Tushnet filed an answer to the complaint and discovery commenced.

13  (Docs. 12, 13).  On January 13, 2012, Officer Tushnet filed a motion for summary judgment, pursuant

14  to Fed. R. Civ. P. 56.  (Doc. 15).  Mr. Rodriguez did not oppose the motion nor file a statement of non-

15  opposition.  On February 13, 2012, Officer Tushnet withdrew his motion for summary judgment after

16  discovering a clerical error in the proof of service.  (Doc. 22).  Officer Tushnet assured the Court that he

17  would re-serve the motion with the corrected service information to ensure that Mr. Rodriguez had an

18  opportunity to respond.  (Doc. 22).  On February 14, 2012, Officer Tushnet re-filed his motion for

19  summary judgment.  (Doc. 24).  Mr. Rodriguez did not oppose the motion nor file a statement of non-

20  opposition.  This Court VACATES the March 29, 2012, hearing or oral argument, pursuant to Local Rule

21  230(g).

22                    **III. LEGAL STANDARDS**

23  **A. Motion for Summary Judgment**

24        Summary judgment is appropriate when the movant shows that "there is no genuine dispute as

25  to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

26  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v.*

27  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment is

28  to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

1  *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

2      To carry its burden of production on summary judgment, a moving party "must either produce
3  evidence negating an essential element of the nonmoving party's claim or defense or show that the
4  nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of
5  persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th
6  Cir. 2000); *see Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (moving party is
7  able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's
8  case").

9      If "a moving party carries its burden of production, the nonmoving party must produce evidence
10  to support its claim or defense." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103.  "If the nonmoving
11  party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins
12  the motion for summary judgment." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)
13  (Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon
14  motion, against a party who fails to make a showing sufficient to establish the existence of an element
15  essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a
16  situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof
17  concerning an essential element of the nonmoving party's case necessarily renders all other facts
18  immaterial.")

19      Fed. R. Civ. P. 56(e)(3) provides that when a party "fails to properly address another party's
20  assertion of fact," a court may "grant summary judgment if the motion and supporting materials –
21  including the facts considered undisputed – show that the movant is entitled to it."  "In the absence of
22  specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly
23  supported summary judgment motion should be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*,
24  854 F.2d 1538, 1545 (9th Cir. 1988) (per curiam).  When a summary judgment motion is unopposed, a
25  court must "determine whether summary judgment is appropriate – that is, whether the moving party has
26  shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax*
27  *Review*, 922 F.2d 168, 175 (3rd Cir. 1990).  A court "cannot base the entry of summary judgment on the
28  mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United*

4

1  *States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  A court "need not sua

2  sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure

3  that the motion itself is supported by evidentiary materials."  *Id*.

4  **B. Section 1983**

5       "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting

6  under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant

7  of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer*

8  *v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).  "Section 1983 'is not itself a source of substantive

9  rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v.*

10  *Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Section

11  1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of

12  'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247,

13  253 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).  Thus, in any section 1983 suit it

14  must be determined "whether the plaintiff has been deprived of a right 'secured by the Constitution and

15  laws.'" *Baker,* 443 U.S. at 140.  Stated differently, in any section 1983 suit the claimant must identify

16  the specific constitutional right allegedly infringed.  *Albright*, 510 U.S. at 271.  "Section 1983 imposes

17  liability for violations of rights protected by the Constitution, not for violations of duties of care arising

18  out of tort law."  *Baker*, 443 U.S. at 146.

19  **IV. DISCUSSION**

20  **A. Excessive Force**

21       The gravamen of Mr. Rodriguez's section 1983 claim is that Officer Tushnet used excessive force

22  in violation of the Fourth Amendment by allowing police dog Kubo to bite and subdue him.  Officer

23  Tushnet seeks summary judgment arguing that the use of force was objectively reasonable.

24       "A Fourth Amendment claim of excessive force is analyzed under the framework outlined by the

25  Supreme Court in *Graham v. Connor*, 490 U.S. 386 [(1989)]." *Smith v. City of Hemet*, 394 F.3d 689, 700

26  (9th Cir. 2005) (en banc).  The pertinent question in an excessive force case is whether the use of force

27  was "objectively reasonable in light of the facts and circumstances confronting [the officer], without

28  regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397 (internal quotation marks

omitted); *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).  Determining whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted); *Blankenhorn*, 485 F.3d at 477.

The Ninth Circuit has explained:

> We apply *Graham* by first considering the nature and quality of the alleged intrusion; we then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Deorle v. Rutherford*, 272 F.3d 1272, 1279-80 (9th Cir. 2001).  As we have previously explained, "[t]hese factors, however, are not exclusive.  Rather, we examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

*Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).  "In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith*, 394 F.3d at 701.  "Ultimately the most important *Graham* factor is whether the suspect posed an immediate threat to the safety of the officers or others." *Mattos*, 661 F.3d at 441 (internal quotation marks omitted).  When considering whether there was an immediate threat, the Ninth Circuit has explained that "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Id*. at 441-42 (internal quotation marks omitted).  Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003).  Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

**1. Nature and Quality of the Force**

Applying the *Graham* factors, this Court first considers the nature and quality of the force used against Mr. Rodriguez: a dog bite to the leg.  The use of dogs to find, bite, and hold concealed suspects

1  is not per se unreasonable. *Chew v. Gates*, 27 F.3d 1432, 1447 (9th Cir. 1994). However, "under some

2  circumstances the use of such a 'weapon' might become unlawful." *Mendoza v. Block*, 27 F.3d 1357,

3  1362 (9th Cir. 1994). For instance, the excessive duration of a bite and the improper encouragement of

4  the continuation of an attack could constitute excessive force. *See Watkins v. City of Oakland*, 145 F.3d

5  1087, 1093 (9th Cir. 1998). Likewise, excessive force is used "when a deputy sics a canine on a

6  handcuffed arrestee who has fully surrendered and is completely under control." *Mendoza*, 27 F.3d at

7  1362.

8      Here, under the circumstances described by Officer Tushnet, the intrusion on Mr. Rodriguez's

9  Fourth Amendment interests was a serious one. Kubo bit and held onto Mr. Rodriguez's leg for the

10  amount of time it took Officer Tushnet to leave his position of cover, order Mr. Rodriguez to show his

11  hands, and for Mr. Rodriguez to show his hands. Thus, the duration of the bite and the use of force were

12  considerable. *See Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003) (concluding that a dog bite

13  to the arm that lasted 45-60 seconds was a serious intrusion on plaintiff's Fourth Amendment interests).

14      **2. Governmental Interests at Stake**

15      Next, this Court considers the governmental interests at stake, mindful of the three factors

16  identified by the Supreme Court in *Graham*. First, this Court considers the severity of Mr. Rodriguez's

17  crimes. *Graham*, 490 U.S. at 396. Mr. Rodriguez was wanted for being in possession of a stolen vehicle

18  and for evading police during a high speed chase. The government has a legitimate interest in

19  apprehending criminal suspects. *See United States v. Hensley*, 469 U.S. 221, 229 (1985) (referring to "the

20  strong government interest in solving crimes and bringing offenders to justice"). Thus, this factor favors

21  the government.

22      Second, this Court considers whether Mr. Rodriguez posed an immediate threat to the safety of

23  the officers or others, which the Ninth Circuit recognizes as the most important of the three *Graham*

24  factors. *See Mattos*, 661 F.3d at 441. From Officer Tushnet's perspective, Mr. Rodriguez posed an

25  immediate safety threat. Officer Tushnet knew that Mr. Rodriguez had already demonstrated a complete

26  disregard for the safety of the public and the officers by recklessly fleeing from officers at high speeds

27  through a residential area at night. Officer Tushnet was also aware that Mr. Rodriguez had not been

28  searched for weapons. In addition, it was dark and Mr. Rodriguez had ample time to gain a position of

1  tactical advantage over the officers.  Officer Tushnet also knew that Mr. Rodriguez remained defiant

2  having ignored at least three warnings that a police dog would be released.  Thus, the second *Graham*

3  factor weighs heavily in the government's favor.

4        Third, this Court considers whether Mr. Rodriguez was actively resisting arrest or attempting to

5  evade arrest by flight.  *Graham*, 490 U.S. at 396.  Mr. Rodriguez led officers on a high speed chase

6  through a residential area, abandoned the car, and fled on foot.  Although Mr. Rodriguez had paused in

7  a backyard at the time of his arrest, Mr. Rodriguez was still evading arrest by flight.  *See Miller*, 340 F.3d

8  at 965-66 (holding that although the plaintiff in an excessive force case paused in the woods at the time

9  of his arrest, he was still evading arrest by flight).  Accordingly, this factor favors the government as well.

10       **3. Reasonableness of Force**

11       Although all three *Graham* factors favor the government, this Court must now consider whether

12 the force that was applied was reasonably necessary under the circumstances.  *Graham*, 490 U.S. at 397.

13 Relevant to this inquiry is the fact that the officers attempted less forceful means of apprehension before

14 applying the challenged force.  *See Miller*, 340 F.3d at 966 (recognizing that although the government

15 need not show that it attempted less forceful means of apprehension before applying the challenged force,

16 the inquiry is highly relevant).  For instance, officers first pursued the stolen vehicle driven by Mr.

17 Rodriguez; when Mr. Rodriguez fled on foot, officers set up a perimeter to contain him; a police

18 helicopter searched the scene; and at least three announcements were made that a police dog would be

19 released.  Each of these less severe measures failed because Mr. Rodriguez failed to surrender.  "[U]se

20 of the police dog was well suited to the task of safely arresting [Mr. Rodriguez]."  *Id*.  It was dark.  The

21 officers were in a residential area.  A suspect that previously showed a complete disregard for public

22 safety by leading officers on a high speed chase and who had not been searched for weapons was at large.

23 Under the totality of the circumstances, the government's strong interests in arresting Mr. Rodriguez

24 outweighed Mr. Rodriguez's legitimate interest in not being bitten by a dog.  Accordingly, use of the

25 police dog was objectively reasonable and Mr. Rodriguez's Fourth Amendment rights were not violated.

26 *See id*. at 968 (concluding that officer's use of a police dog to bite and hold suspect until deputies arrived

27 on the scene less than a minute later was a reasonable seizure that did not violate the suspect's Fourth

28 Amendment rights); *Mendoza*, 27 F.3d at 1362-63 (holding that use of police dog to find and secure

8

1  suspect, which resulted in two dog bites, was objectively reasonable).

2       This Court GRANTS Officer Tushnet's request for summary judgment.

3  **B. Qualified Immunity**

4       Because this Court finds that Officer Tushnet is entitled to summary judgment with regard to Mr.

5  Rodriguez's Fourth Amendment claim, this Court declines to address Officer Tushnet's arguments

6  regarding qualified immunity.

7                    **V. CONCLUSION AND ORDER**

8       For the reasons discussed above, this Court:

9       1.      VACATES the March 29, 2012, hearing or oral argument, pursuant to Local Rule

10              230(g);

11      2.      GRANTS Officer Tushnet's motion for summary judgment; and

12      3.      DIRECTS the clerk to enter judgment in favor of defendant Officer Tushnet and

13              against plaintiff Robert Rodriguez, to close this action.

14  IT IS SO ORDERED.

15  **Dated:    March 23, 2012**                    **/s/ Lawrence J. O'Neill**
16                                              UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

9